**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JAMES T. WALKER,

    Plaintiff,

  v.

    Civil Action No. 14-266 (BAH)

    Judge Beryl A. Howell

GINA McCARTHY, *Administrator, United States Environmental Protection Agency*,

    Defendant.

---

**MEMORANDUM OPINION**

  The plaintiff, James Walker, who is proceeding *pro se*, brings this action against Gina McCarthy, in her official capacity as the Administrator of the U.S. Environmental Protection Agency ("EPA" or "the agency"), where the plaintiff is employed as a Senior Scientist.  The plaintiff claims that he was discriminated against based on his race and retaliated against for prior protected EEO activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), when he was not given permission to work remotely from Rochester, New York for a period of two years to care for his ailing mother.  Compl., ECF No. 1.  Contending that EPA maintains no policy allowing employees to work off-site on a full-time basis, and noting that it maintains no office in the plaintiff's desired work location, the agency responds that the plaintiff's request was nonetheless still under consideration when he commenced this action.  Pending before the Court is the EPA's motion to dismiss or, in the alternative, for summary judgment.  Def.'s Mot. Dismiss, or, in the Alt., Mot. Summ. J. ("Def.'s Mot."), ECF No. 16.  For the reasons discussed below, this motion is granted.

## I.     BACKGROUND

In opposing the agency's motion for summary judgment, the plaintiff responded to EPA's

Statement of Material Undisputed Facts ("Def.'s SMF"), ECF No. 16-1, as required by D.C.

Local Civil Rule 7(h)(1), and also submitted his own Statement of Disputed and Undisputed

Materials Facts, ("Pl.'s SMF"), ECF No. 20-1.  The Court has carefully considered these

submitted materials in evaluating the parties' factual assertions and arguments, and the

inferences that can be drawn in favor of the plaintiff as the non-moving party.  The facts

pertinent to the plaintiff's claims are summarized below, with citation to the exhibits submitted

by both parties.

The plaintiff works as an environmental scientist in the Office of Research and

Development in EPA's National Center for Environmental Assessment ("NCEA").  Def.'s SMF

¶ 2; Pl.'s SMF ¶ 2.  Prior to the events giving rise to his present allegations, the plaintiff pursued

at least two formal complaints alleging discrimination by his superiors at NCEA, including:

(1) an internal EEO complaint for which he was counseled by the Agency in May 2007; and (2) a

complaint alleging illegal discrimination and retaliation that was dismissed by this Court in 2007,

SMF ¶ 34; Pl.'s SMF ¶ 34; *see Walker v. Johnson*, 501 F. Supp. 2d 156 (D.D.C. 2007).

On September 2, 2008, upon learning that his mother had been diagnosed with lung

cancer, the plaintiff emailed his immediate supervisor, as well as two higher-level managers, to

request permission "to work in Rochester, New York for two years."  Pl.'s SMF ¶ 7; Def.'s

Mem. Supp. Mot. Dismiss, or, in the Alt., Mot. Summ. J. ("Def.'s Mem."), Ex. 6 (Sept. 2, 2008

Email Request to Work in Rochester, New York), ECF No. 16-3.  According to the plaintiff, his

remote-work request was submitted under the agency's Flexible Workplace ("Flexiplace")

Program, which generally governs teleworking by EPA employees.  Pl.'s Mem. Opp'n Def.'s

Mot. Dismiss, or, in the Alt., Mot. Summ. J. ("Pl.'s Opp'n") at 4, ECF No. 20-1.  At the time of

the plaintiff's request, the Flexiplace Program permitted employees to telework up to two days

per week as an element of their regular employment arrangement, as well as "episodic telework

arrangements for work on specific projects."  Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4.  Other than in order

to provide a reasonable accommodation to eligible employees, however, the agency had no

formal policy in place allowing for employees to work off-site on a full-time basis.  Def.'s SMF

¶ 5; Pl.'s SMF ¶ 5.

Prior to his initial meeting with the plaintiff, the plaintiff's supervisor consulted with

senior NCEA administrators regarding what policies, if any, the agency followed for requests by

employees to "work from a remote location outside [their] duty station's commuting area," and

learned that no policy existed for employees seeking to work remotely for extended periods of

time.  Def.'s Mem., Ex. 8 (Decl. Paul White, dated Aug. 8, 2011 ("White Decl.")) ¶¶ 11–12,

ECF No. 16-3.  Nonetheless, although the EPA maintains no offices in the Rochester area, Def.'s

SMF ¶ 8; Pl.'s SMF ¶ 8, the plaintiff's supervisor indicated on September 5, 2008, that he was

"thinking through [the plaintiff's] request," and asked to meet with plaintiff to discuss the

proposal further, Def.'s Mem., Ex. 7 (Sept. 5, 2008 Email Reply Re: Request to Work in

Rochester), ECF No. 16-3.

Over the next two months, this supervisor attempted to work with the plaintiff to identify

a mutually agreeable arrangement in response to the plaintiff's request.  First, at their initial

meeting in late September or early October 2008, the supervisor suggested that the plaintiff's

request was more likely to be approved if it were for a shorter length of time, such as three to six

months.  Def.'s SMF ¶ 11; Pl.'s SMF ¶ 11.  Later, on November 17, 2008, this supervisor

emailed the plaintiff to determine the plaintiff's proposed start-date in Rochester and request

additional information regarding how working remotely would affect the plaintiff's work responsibilities.  Def.'s Mem., Ex 10 ("Nov. 17, 2008 Workplace Request Email"), ECF No. 16-3.  In this latter communication, the supervisor reiterated that plaintiff's request would have a greater chance of being approved if it were for a shorter length of time.  *Id.*

Nonetheless, on November 17, 2008, the plaintiff abruptly indicated to his supervisor that, "because [the agency] essentially denied [his] request to live and work in Rochester, N.Y. for a minimum of two years," he had contacted the agency's EEO counselor and commenced an internal EEO complaint process.  Def.'s Mem., Ex 12 ("Nov. 17, 2008 Re: Workplace Request Email"), ECF No. 16-3.  While his request had not been formally denied, the plaintiff explains that because his office did not affirmatively approve his request to this point, he "took that as a denial."  Def.'s SMF ¶ 14; Pl.'s SMF ¶ 14.  According to the EEO counselor's report, however, the plaintiff initially contacted the EPA's EEO office on September 23, 2008, roughly three weeks after making his initial request via email, and either soon before or soon after his first meeting with his supervisor regarding this request.  Def.'s SMF ¶¶ 7, 11, 16; Def.'s Mem., Ex. 9 (Dec. 17, 2008 EEO Counselor's Report), ECF No. 16-3.

In any event, following his initial contact with the EPA EEO counselor, the plaintiff filed a formal discrimination complaint against the agency on December 12, 2008.  Def.'s Mem. at 2; Def.'s Mem., Ex. 1 (EPA's Statement and Acceptance of Claims) at 1, ECF No. 16-2.  In that complaint, the plaintiff alleged he had been discriminated against, based on his race and in retaliation for his prior EEO activity, in connection with his requested remote-work assignment to Rochester.  Def.'s Mem., Ex. 1 at 1.  In response to these allegations, the EPA Office of Civil Rights initiated an internal investigation of the plaintiff's complaint on December 23, 2008.  *Id.*

In October 2009, while this investigation was still underway, the EPA's Office of the Inspector General ("OIG") produced a report reviewing EPA's policy of "granting full-time work-at-home privileges, including flexi-place arrangements" to employees throughout the agency. Def.'s SMF ¶ 31; Pl.'s SMF ¶ 31. The agency contends that following OIG's report, until "clearer guidelines" for work-at-home privileges were developed, the agency placed a "moratorium on any future requests, thus holding in abeyance any requests, including [the plaintiff's], that had not yet been acted on at the time [of the report]." Def.'s SMF ¶¶ 31–32; Def.'s Mem., Ex. 14 (Decl. David Bussard, dated Aug. 9, 2011 ("First Bussard Decl.")) ¶ 12, ECF No. 16-3. As a result of this moratorium, the agency maintains that, to date, no final decision has been reached as to the plaintiff's request for long-term reassignment to Rochester. First Bussard Decl. ¶ 13; White Decl. ¶¶ 17, 19.

After the internal agency investigation was completed, an Administrative Judge ("AJ") at the U.S. Equal Employment Opportunity Commission ("EEOC") held a two-day administrative hearing to consider the plaintiff's complaint in July 2013. Def.'s Mem. at 2–3; Def.'s Mem., Ex. 2 (EEOC Order Entering Judgment and Decision) at 5, ECF No. 16-2. In connection with this hearing, the agency stipulated that the plaintiff's supervisor, the NCEA Director, and Director of the Washington Division were each aware of the plaintiff's previous protected EEO activity when the plaintiff submitted his request to work for a period of two years in Rochester. Def.'s SMF ¶ 35; Pl.'s SMF ¶ 35.

On September 30, 2013, the AJ found in favor of the agency, concluding that the plaintiff had not established his claims of discrimination and retaliation by a preponderance of the evidence. *See* Def.'s Mem., Ex. 2 at 1, 14. Pursuant to the AJ's decision, the agency issued a formal order within forty days advising the plaintiff of his right to file an action in federal court,

*id.* at 2, which the plaintiff received on or about November 21, 2013, Compl. ¶ 8.  Thereafter, the plaintiff timely filed the instant action on February 18, 2014.  *See* Compl.

Alleging violations of Title VII and 42 U.S.C. § 1981, the plaintiff claims that his supervisors' illegally denied his request for long-term reassignment to work remotely from Rochester, New York: (1) on the basis of his race and color ("Count I"), Compl. ¶¶ 9–13; and (2) in retaliation for his prior protected EEO activity, of which his supervisors were aware ("Count II"), *id.* ¶¶ 14–15.  After referral to a Magistrate Judge for unsuccessful settlement discussions, Def.'s Notice to the Court to Cancel Mediation, ECF No. 13, the parties engaged in over seven months of discovery, *see* Minute Order, dated July 8, 2014.  With that period of discovery now complete, the EPA has moved for summary judgment on each of the plaintiff's claims.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden to demonstrate the "absence of a genuine issue of material fact" in dispute, *id.* at 323, while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.* ("*Liberty Lobby*"), 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on

summary judgment, the appropriate inquiry is "whether, on the evidence so viewed, a reasonable jury could return a verdict for the nonmoving party") (internal quotations and citation omitted); *see also* FED. R. CIV. P. 56(c) and (e)(2), (3); *Greer v. Paulson,* 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("[S]heer hearsay . . . counts for nothing on summary judgment.") (internal quotation marks omitted).

"Evaluating whether evidence offered at summary judgment is sufficient to send a case to the jury is as much art as science." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011). This evaluation is guided by the related principles that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 1863 (quoting *Liberty Lobby*, 477 U.S. at 255). Courts must avoid making "credibility determinations or weigh[ing] the evidence," since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150–51 (2000); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015). In addition, for a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *see Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011); *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e). If "'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment.'" *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record."  FED. R. CIV. P. 56(c)(3).

## III.   DISCUSSION

The plaintiff claims that his supervisors at the EPA discriminated against him, on the basis of his race and in retaliation for his prior complaints of discrimination, in failing to grant his request to work remotely from Rochester, New York, for a period of two years.  Compl. ¶¶ 9–15.  According to the plaintiff, under the EPA Flexiplace Program, agency employees are permitted to work at a place other than their regularly assigned work site (including another EPA office or the employee's residence).  Compl. ¶ 10.  The plaintiff argues that other EPA employees were permitted under this program to work away from their assigned work site for extended periods, and asserts that his supervisors' failure to grant his own request for such an arrangement was discriminatory and retaliatory.  Pl.'s Opp'n at 17–18.

Seeking summary judgment, EPA proposes two alternative grounds for concluding that the plaintiff has failed to raise a legitimate factual issue requiring resolution of his discrimination and retaliation claims at trial.  First, the agency argues that the plaintiff has not shown that the failure to grant his request to work remotely negatively affected his employment status or caused a significant change in benefits to which he was entitled as an EPA employee and, as a result, the plaintiff has not demonstrated that he suffered any adverse employment action giving rise to a *prima facie* case of discrimination or retaliation under Title VII.  Def.'s Mem. at 5.[1]

---

[1]     EPA frames this aspect of the present motion as a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  Def.'s Mem. at 4–5. In support, however, the agency refers to record evidence not included in the pleadings.  *See id.*  Accordingly, the

Alternatively, EPA contends that, even assuming the plaintiff did experience an adverse employment action, the agency had legitimate, non-discriminatory reasons for failing to grant the plaintiff's request.  Def.'s Mem. at 12.  Specifically, the agency contends that the undisputed record evidence demonstrates that, at the time of the plaintiff's request: (1) the agency's Flexiplace Policy permitted only "two days per week as a regular telework arrangement," and the agency therefore maintained no policy allowing employees to work off-site on a full-time basis; (2) the agency had no office located in Rochester, New York; and (3) though the plaintiff's request was not granted, it was never formally denied and has been held in abeyance since October 2009 pending the promulgation of agency regulations governing employee requests to work remotely on a longer-term basis.  Def.'s Mem. at 12–13.

The plaintiff responds that these proffered non-discriminatory justifications "lack credence and show that discrimination is the true reason for [the agency's] actions."  Pl.'s Opp'n at 19.  In addition to emphasizing his prior successful job performance, *id.* at 20, the plaintiff points to evidence he argues demonstrates an "unwritten policy" that enabled similarly situated employees to work off-site on a full-time basis, *id.* at 21.  In particular, the plaintiff proposes five agency employees, whom the plaintiff asserts were permitted to work away from their primary duty station for extended periods despite the lack of a formal policy permitting such an arrangement and the later moratorium on granting such requests.  *Id.* at 4, 7–9, 21–22.  According to the plaintiff, the differing treatment of these employees raises an inference that the failure to grant his request to work remotely for a period of two years was due to his race or his prior EEO activity.  *Id.* at 18.

---

Court will assess this aspect of the present motion in connection with the resolution of the agency's request for summary judgment.

Following a summary of the legal principles that guide review of the plaintiff's discrimination and retaliation claims, as well as the parties' arguments in connection with the present motion, the record evidence supporting each of the plaintiff's claims is considered in turn.

## A.       Legal Principles Governing Employment Discrimination Claims

"Title VII prohibits the federal government from discriminating in employment on grounds of race or sex, and from retaliating against employees for engaging in activity protected by Title VII." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (internal citations omitted).[2]  Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *accord Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).

Suffering an adverse employment action means that the plaintiff experienced "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)).  Thus, an adverse employment action is generally evident only where an employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a

---

[2]       The plaintiff initially asserted a claim under 42 U.S.C. § 1981, Compl. at 1, but subsequently alleged no facts and made no argument in support of this claim in response to the present motion, *see generally* Compl.; Pl.'s Opp'n.  Generally speaking, however, "[c]ourts analyze Title VII and Section 1981 employment discrimination claims under similar legal standards." *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 31 (D.D.C. 2013). Thus, the D.C. Circuit has clarified that claims brought under § 1981 are subject to the same *McDonnell Douglas* burden-shifting framework applicable to Title VII discrimination and retaliation claims. *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).  Accordingly, to the extent that the plaintiff has not abandoned his § 1981 claim, the following analysis of plaintiff's Title VII claim applies equally to his claim under § 1981.

reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). "Stated another way, 'not everything that makes an employee unhappy is an actionable adverse action.' [Were it otherwise, m]inor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would . . . form the basis of a discrimination suit." *Bridgeforth v. Jewell*, 721 F.3d 661, 664 (D.C. Cir. 2013) (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)).

Where a plaintiff presents no direct evidence of discrimination, the Court's analysis of circumstantial evidence follows the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). To establish a *prima facie* case of discrimination under this framework, the plaintiff bears the burden of showing that (1) he or she "is a member of a protected class;" (2) he or she "suffered an adverse employment action;" and (3) "the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802.

While this framework generally requires the plaintiff to bear the initial burden of making out a *prima facie* case of discrimination, the D.C. Circuit has clarified that courts "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*," where (1) "an employee has suffered an adverse employment action" and (2) "an employer has asserted a legitimate, non-discriminatory reason for the decision." *Brady*, 520 F.3d at 494 (emphasis in original). Thus, where an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action, "the burden-shifting framework disappears, and a

court reviewing summary judgment looks to whether a reasonable jury could infer intentional discrimination . . . from all the evidence." *Carter v. George Wash. Univ.,* 387 F.3d 872, 878 (D.C. Cir. 2004).

To do so, at the summary judgment stage, courts may consider the following evidence: (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to rebut the employer's explanations for its actions; and (3) any additional "evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *See Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012); *Carter*, 387 F. 3d at 878. The plaintiff need not "submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment." *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (internal quotation marks and citations omitted). Nonetheless, the plaintiff's own disagreement with, or disbelief of, the employer's explanation cannot alone "satisfy the burden of showing that a reasonable jury could find that the employer's asserted reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Burton v. District of Columbia*, No. CV 10-1750, 2015 WL 9907798, at *32 (D.D.C. Oct. 9, 2015).

To demonstrate "that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, [a plaintiff may cite] the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (citing *Brady*, 520 F.3d at 495 & n.3). If relying

solely on evidence of pretext, however, a plaintiff seeking to survive summary judgment must demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Id.* at 1096. Thus, in considering such evidence, the D.C. Circuit has emphasized that the court "does not sit as a 'super-personnel department' that reexamines an employer's business decisions, and 'may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Wheeler v. Georgetown Univ. Hosp.*, No. 14-7108, 2016 WL 556705, at *4 (D.C. Cir. Feb. 12, 2016) (internal citations omitted).

### B.     The Plaintiff's Disparate Treatment Claim

The plaintiff alleges that his supervisors denied his request to work remotely from Rochester, New York, for a period of two years on account of his race. Compl. ¶¶ 9–13. EPA responds that any failure to grant the plaintiff's request for such an accommodation did not constitute an "adverse employment action" giving rise to a claim of discrimination under Title VII. Def.'s Mem. at 4–5. Alternatively, the agency argues that it did not grant the plaintiff's remote-work request because, lacking a formal policy allowing for such an arrangement, the agency's effort to work with the plaintiff to identify a mutually agreement solution was preempted initially by the plaintiff's present EEO complaint and later by an agency-wide moratorium on long-term telework arrangements. *Id.* at 11–13.

Since the agency has asserted multiple legitimate, non-discriminatory reasons for failing to grant the plaintiff's request, the Court generally must presume that the plaintiff has met his initial burden of demonstrating a *prima facie* case of discrimination. *Brady*, 520 F.3d at 494. Thus, to dispose of the present motion, the court must consider "whether a reasonable jury could infer intentional discrimination . . . from all the evidence" offered by the parties. *Carter,* 387 F.3d at 878. In so doing, the Court may "resolve that question in favor of the [agency] based

either upon the [plaintiff's] failure to rebut its explanation or upon the employee's failure to prove an element of [his] case," such as whether his "employer took a materially adverse action against [him]." *Taylor v. Solis*, 571 F.3d 1313, 1320 n.4 (D.C. Cir. 2009).

With this in mind, the discussion that follows considers, first, whether the plaintiff has adduced sufficient evidence to allow a reasonable jury to find that he has suffered an adverse employment action giving rise to a claim of discrimination under Title VII.  Thereafter, assuming the plaintiff has met this burden, the Court considers whether his asserted record evidence raises a genuine factual issue regarding the agency's asserted non-discriminatory motives.

### 1.    *Adverse Employment Action*

Even viewed in the light most favorable to the plaintiff, the record evidence put forward by the parties does little to suggest that the plaintiff, in failing to obtain his requested long-term remote-work arrangement, has experienced an adverse employment action within the meaning of Title VII.

As an initial matter, the parties disagree as to whether the agency took *any* action in response to the plaintiff's proposal to work remotely for a period of two years to care for his ailing mother.  Specifically, the agency maintains that "there is no evidence that [the plaintiff's] request was ever denied," Def.'s Mem. at 12, and points instead to evidence it contends shows that, rather than rejecting his request outright, the plaintiff's supervisors were working with the plaintiff to identify a mutually agreeable arrangement up to the date on which he filed his initial EEO complaint, at which point the plaintiff advised them that future correspondence regarding the request should be directed to the EPA Office of Civil Rights, *id.* at 12–13.  Thereafter, EPA contends that the plaintiff's request was "[held] in abeyance" due to the subsequent agency-wide moratorium on work-at-home requests.  *Id.*  The plaintiff counters that he understood the agency's failure to approve such an arrangement within a matter of weeks after he initially

conveyed his request to his immediate supervisor as a denial of this request.  Def.'s SMF ¶ 14;

Pl.'s SMF ¶ 14 (explaining that the plaintiff testified at the July 2013 EEOC hearing that his

supervisors' initial responses "[were] not a commitment to [the plaintiff,] so [he] took that as a

denial").  While the plaintiff points to no evidence that the agency officially denied his remote-

work request, the record evidence does suggest that his request was unlikely to be approved

without significant modification.  *See, e.g.*, Def.'s SMF ¶ 13; Pl.'s SMF ¶ 13 (indicating that the

plaintiff's immediate supervisor advised the plaintiff that his request had a better chance of

success if, instead of two years, the plaintiff requested to work from Rochester for only six

months).  For this reason, it appears likely that the plaintiff's request to work remotely for a

minimum of two years would not have been granted.

Regardless, even interpreting the agency's response as an affirmative denial of the

plaintiff's request, the plaintiff has put forward little evidence upon which a reasonable jury

could conclude that such a denial constituted an adverse employment action under Title VII.

Indeed, in opposing summary judgment, the plaintiff points to no evidence that the denial of his

unusual request represented "a significant change in [his] employment status," on the order of a

"hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing significant change in benefits."  *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C.

Cir. 2003).  Having alleged no change in his responsibilities as a result of the denial of his

remote-work request, *see generally* Compl., the plaintiff must demonstrate that his inability to

work remotely for a period of two years "affect[ed] the terms, conditions, or privileges of

employment or future employment opportunities such that a reasonable trier of fact could find

objectively tangible harm."  *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal

quotation marks and citations omitted).  Though no doubt disappointed that he was unable to

care for his mother during the relevant period, however, the plaintiff offers scant evidence to demonstrate that this disappointment rose to the level of objective, tangible harm.

For example, the plaintiff argues that, because the EPA Flexiplace Program permitted agency employees to work at a place other than their regularly assigned work site, the denial of his request to work off-site for a period of two years denied him a benefit of his employment. Compl. ¶ 10.  As previously explained, however, *supra* Part I, the Flexiplace Program covered only certain kinds of teleworking arrangements and, at the time of the plaintiff's request, EPA maintained no formal policy allowing employees to work remotely in the manner proposed by the plaintiff.  Further, agency policy specifically indicates that an employee's ability to telework under the program "is discretionary on the part of management . . . [and] is NOT an employee right or entitlement."  Def.'s Mem., Ex. 4 (EPA Flexiplace Policy) at 4, ECF No. 16-2 (emphasis in original).

Moreover, even construing the plaintiff's proposal as arising under the Flexiplace Program, courts in this Circuit have consistently held that the denial of a request to telework does not, in and of itself, amount to an adverse employment action.  *See Redmon v. United States Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) (collecting cases); *Byrd v. Vilsack*, 931 F.Supp.2d 27, 41 (D.D.C. 2013); *Ng v. Lahood*, 952 F. Supp. 2d 85, 96 (D.D.C. 2013) (noting the lack of authority for "the proposition that an adverse employment action can result from an employer's requirement that an employee work from a particular location" and observing that "the case law points to the opposite conclusion"); *Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action.").  Most recently, in *Brown v. Jewell*, the court considered whether denial of the plaintiff's request to work remotely from his

home two days per week was an adverse action sufficient to support a claim under Title VII.  No. 13-CV-295, 2015 WL 5730362, at *1, 8 (D.D.C. Sept. 29, 2015).  Concluding that the inability to work from a preferred off-site location does not involve "'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits,'" the court held that the plaintiff failed to allege a viable employment discrimination claim.  *Id.* (citing *Taylor*, 350 F.3d at 1293).

By comparison, the evidence put forward by the plaintiff in this case presents an even more tenuous basis for concluding that he experienced discrimination within the meaning of Title VII.  Indeed, here, the plaintiff was asking for far more than to work off-site two days a week—he wanted to work away from any agency office for "a minimum of two years."  *See* Def.'s Mem., Ex 12; Def.'s Mem., Ex. 6; Compl. ¶ 12.  Further, when given the opportunity to revise his request and instead seek permission for a shorter-term remote-work arrangement, the plaintiff refused.  Def.'s Mem. at 12; Pl.'s SMF ¶¶ 13–14.  The plaintiff cites no authority, and the Court has identified no such authority, for the proposition that the denial of such an unusual and extraordinary request, unlike the shorter-term telework requests considered in this Circuit and others, qualifies as an adverse employment action giving rise to a potential claim of discrimination under Title VII.  *See generally* Pl.'s Opp'n.  For this reason, the Court is skeptical that the denial of the plaintiff's proposal to work remotely for two years would, by itself, effect a significant change to "terms, conditions, or privileges of employment . . . such that a reasonable trier of fact could find objectively tangible harm."  *Douglas*, 559 F.3d at 552.

### 2.    *Legitimate Non-Discriminatory Basis*

Even assuming, *arguendo,* that the plaintiff has demonstrated that he experienced cognizable harm arising from the denial of his remote-work request, he has failed to advance

sufficient evidence to refute the agency's asserted legitimate, non-discriminatory reasons for denying this request.

As previously mentioned, the agency asserts a variety of non-discriminatory reasons for not granting the plaintiff's request to work remotely for an extended period—namely, that the agency had no policy governing such requests and did not have offices located in the plaintiff's preferred location, and that certain of the plaintiff's responsibilities would be more difficult to perform from a remote location.  Def.'s SMF ¶ 17 (describing the EEOC hearing testimony of the plaintiff's immediate supervisor, who averred that the plaintiff's work for the agency required collaboration with other NCEA scientists, which would be more difficult to accomplish "at a distance").  Arguing that these stated reasons are merely pretext hiding the agency's true discriminatory motive, the plaintiff points to evidence of five EPA employees who, according to the plaintiff, were permitted under similar circumstances to work remotely for extended periods.  Pl.'s Opp'n at 4, 7–9.

The D.C. Circuit has long recognized that such comparator evidence may serve as one way a Title VII plaintiff could demonstrate that an employer's proffered non-discriminatory reasons for undertaking a challenged action are pretextual.  *Brady*, 520 F.3d at 495.  By demonstrating that similarly situated employees were treated differently, such evidence tends to "[suggest] that the employer treated other employees" outside the plaintiff's protected class "more favorably in the same factual circumstances," giving rise to the inference that the plaintiff was treated less favorable on account of his or her protected status.  *Id.*  To raise such an inference, however, the plaintiff must "demonstrate that 'all of the relevant aspects of [his] employment situation were nearly identical to those of the other employee.'"  *Burley*, 801 F.3d at 301 (quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)).

"Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they [dealt with] the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Wheeler*, 2016 WL 556705, at *5 (citing *Burley*, 801 F.3d at 301). "The question of whether employees are similarly situated in order to show pretext 'ordinarily presents a question of fact for the jury.'" *Id.* (quoting *George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005)). At the summary judgment stage, however, where a plaintiff relying on comparator evidence fails to produce "evidence that the comparators were actually similarly situated to him, an inference of falsity or discrimination is not reasonable," and summary judgement is appropriate. *Montgomery*, 546 F.3d at 707 (internal quotations omitted) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 995–96 (D.C. Cir. 2002)).

Here, the evidence offered by the plaintiff in opposition to the present motion is simply insufficient to raise a genuine factual issue regarding the similarity of the putative comparators he proposes. Indeed, in stark contrast to the plaintiff's own request to work in a location with no EPA facility, four of the five comparators proposed by the plaintiff were permitted simply to work from a *different* EPA facility after initially being assigned to the agency's Washington headquarters. In particular, two of these employees were allowed to work from an EPA emergency response center facility in Edison, New Jersey. *See* SMF ¶¶ 21–23; Pl.'s SMF ¶¶ 22–23; Def.'s Mem., Ex. 15 (Decl. David Bussard, dated Apr. 3, 2009 ("Sec. Bussard Decl.")) at 5–6, ECF No. 16-3.[3] Much the same, two of the plaintiff's proposed comparators each relocated

---

[3]     The plaintiff's contention that evidence offered by the agency demonstrates that these employees were each allowed to "work remotely from [their] home[s] near an Agency facility in Edison, New Jersey," Pl.'s SMF ¶¶ 22–23, plainly mischaracterizes this evidence. In fact, the defendant's asserted evidence clearly indicates that each of these employees was permitted to work "remotely *from an Agency facility* in Edison, New Jersey," Def.'s Mem., Ex. 2 at 7 (emphasis added), and the plaintiff points to no other record evidence suggesting otherwise, *see generally* Pl.'s SMF.

from EPA's Washington headquarters to an agency facility in Research Triangle Park ("RTP"), North Carolina, which itself houses an NCEA division office.  Def.'s Mem., Ex. 5 ("EEOC Hrg. Tr.") at 464, ECF No. 16-2.  One of these employees was permitted, for personal reasons, to permanently relocate her work station to the RTP facility, Def.'s SMF ¶ 29; Pl.'s SMF ¶ 29; EEOC Hrg. Tr. at 268–69, while the other employee relocated to the facility to serve as acting NCEA Division Director at that location, Def.'s SMF ¶ 30; EEOC Hrg. Tr. at 462.  Although the plaintiff correctly notes that, following her initial relocation, this latter employee worked for a period of time in Colorado, his suggestion that the employee "received authority to work remotely from Denver, Colorado" misconstrues the evidence put forward by the parties.  *See* Pl.'s SMF ¶ 30.  In fact, this evidence demonstrates that this employee participated in an Intergovernmental Personnel Agreement with the University of Colorado at Boulder for four years, after which the employee requested, and was allowed, to resume her NCEA duties temporarily from the EPA's regional facility in Denver.  Pl.'s Opp'n., Ex. V (Decl. Ila Cote, dated Mar. 5, 2013) ¶¶ 7–8, 11–12, ECF No. 20-1.

Thus, quite unlike the plaintiff's request to work temporarily from a location with no EPA facility, the record evidence demonstrates that each of these proposed comparators was simply reassigned from one EPA facility to another either for personal reasons or in connection with changes in their job responsibilities.  This distinction, coupled with the agency's unrefuted evidence that the plaintiff's work for the agency demanded collaboration with other EPA employees, which would be complicated by the plaintiff's request to work remotely from a location with no EPA facility, Def.'s SMF ¶ 17, significantly undermines any easy comparison between the plaintiff and these proposed comparators.  In this regard, the relevant aspects of the plaintiff's employment are also not so "nearly identical" to his proposed comparators to raise a

genuine factual issue as to whether the agency failed to grant his long-term remote-work request due to his race. *Burley*, 801 F.3d at 301.

By comparison, however, the plaintiff's final comparator presents a closer case. This employee, who also served as an NCEA scientist at EPA headquarters in Washington, received permission under the Flexiplace Program in February 2008 to work remotely from his home in Katy, Texas. Def.'s SMF ¶ 24; EEOC Hrg. Tr. at 526; Sec. Bussard Decl. at 4. Like Rochester, there is no EPA facility in Katy, Texas. Pl.'s SMF ¶ 8. Noting that his own request for a similar remote-work arrangement under the Flexiplace Program was denied, the plaintiff contends that this evidence gives rise to an inference of discriminatory intent. Pl.'s Opp'n at 18. In truth, however, the evidence put forward by the parties more readily demonstrates that this putative comparator was treated no more favorably than the plaintiff in connection with his remote-work request.

Most notably, while the plaintiff requested to work remotely for "a minimum of two years," Def.'s SMF ¶ 15, his proposed comparator was initially allowed to work remotely for only six months, Pl.'s SMF ¶¶ 24–25; Def.'s Mem. at 14; Sec. Bussard Decl. at 4.[4] The agency approved this temporary arrangement to allow the employee to complete work on a number of key assignments, for which the employee's supervisors feared they would have difficulty finding a ready replacement. Def.'s SMF ¶¶ 25–26. This episodic arrangement was revisited every six months, with the agency apparently agreeing to allow the employee to extend his remote-work

---

[4]     The parties appear to dispute whether this comparator's remote-work request arose under the EPA Flexiplace Policy. *Compare* Def.'s Mem. at 14 (explaining that the comparator submitted this request under the program), *with* Pl.'s Opp'n at 21 (characterizing this decision as consistent with an "unwritten policy which allowed [the proposed comparator] and other white employees from NCEA to work off site on a full time basis"). While the record is somewhat unclear as to the genesis of this request, *see, e.g.*, Def.'s Mem., Ex. 17 (Decl. Charles Ris, dated Mar. 27, 2009) at 2–3, ECF No. 16-3 (explaining that this employee's remote-work arrangement did not originate with a request from the employee, "but rather as a consequence of his notification to resign because of a voluntary family relocation"), the Flexiplace Policy does provide for "episodic telework arrangements for work on specific projects." Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4.

accommodation for an additional six months on at least two occasions.  *Id.*; Def.'s Mem. at 14; Sec. Bussard Decl. at 4–5.[5]  At some point thereafter, however, NCEA management began working to reduce the number of employees reporting remotely and gave the employee the option of returning to Washington or resigning, at which point the employee resigned.  Pl.'s SMF ¶ 27; Sec. Bussard Decl. at 4–5; EEOC Hrg. Tr. at 450.  Conversely, when the plaintiff was given the option of revising his request to a more limited, "initial trial period of 3–6 months," White Decl. ¶¶ 14-15, 17, he refused and insisted that he be allowed to relocate to Rochester for "a minimum of two years," *see* Def.'s Mem., Ex 12.  As such, contrary to the plaintiff's contention that he was treated differently than his proposed comparator, the record evidence demonstrates that EPA managers proposed essentially the same arrangement in response to each employee's remote-work request.  White Decl. ¶¶ 14, 17.  Unlike his putative comparator, however, the plaintiff was unwilling to consider relocation for a shorter period than the two years he requested.  Def.'s SMF ¶ 14; Def.'s Mem., Ex 12.

In sum, although the plaintiff has identified five employees who, unlike the plaintiff, were permitted to leave their work stations at EPA headquarters in Washington and work instead from other locations throughout the country, the record evidence demonstrates important distinctions between these employees' situations and the remote-work arrangement proposed by the plaintiff.  Four of these putative comparators were allowed, for personal or professional reasons, to work at a separate EPA facility during the course of their employment with the agency.  These arrangements stand in clear contrast to the plaintiff's request to work for an

---

[5]     The plaintiff asserts that this employee was eventually permitted to work remotely for a total of three years. Pl.'s Opp'n at 3 (citing Pl.'s Opp'n, Ex. I).  The record evidence cited by the plaintiff, however, fails to support this assertion and instead indicates only that this employee was permitted to work from Texas for at least eighteen months.  Specifically, the evidence proffered by the plaintiff shows that, following this employee's initial remote-work request in May 2006, his request was granted for six months in February 2007 before twice being renewed for six-month intervals in August 2007 and February 2008.  Pl.'s Opp'n, Exs. I, II, ECF No. 25.

extended period in a location with no such facility.  Similarly, while the final putative comparator was allowed to work in such a location for at least a year, the plaintiff points to no evidence that this employee, like the plaintiff, sought permission to work remotely for no less than two years.

For this reason, the plaintiff has "failed to offer any evidence that [he] was treated unfavorably compared to other employees," *McGill v. Munoz*, 203 F.3d 843, 847 (D.C. Cir. 2000), and likewise presents no direct evidence that the denial of his remote-work request was motived by his race.  Consequently, he cannot demonstrated that the agency's legitimate, non-discriminatory explanations for failing to grant his long-term remote-work request were pretextual such that a reasonable jury could conclude that the agency in fact acted with discriminatory intent, *id.*; *see also Walker*, 798 F.3d at 1096, and the agency's motion for summary judgment on the plaintiff's disparate treatment claim is therefore granted.

### C.    The Plaintiff's Retaliation Claim

In addition to his disparate treatment claim, the plaintiff alleges that the agency's failure to grant his request to work remotely for a period of two years "was also based on reprisal" for his prior EEO activity, of which NCEA senior management was aware.  Compl. ¶¶ 14–15; Def.'s SMF ¶ 35.  As discussed below, even viewing the record evidence in the light most favorable to the plaintiff, he has failed to raise a triable factual issue regarding his claim that the failure to grant his request was due to his prior EEO complaints against the agency.

To prevail on a claim of unlawful retaliation, an employee must show he "engaged in protected activity, as a consequence of which [his] employer took a materially adverse action against [him]." *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007).  "A materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Taylor*, 571 F.3d at 1320 (quoting *Burlington N. & Santa Fe Ry. Co. v.*

*White*, 548 U.S. 53, 57 (2006)).  As with disparate treatment claims under Title VII, allegations of retaliation that are based, as here, on circumstantial evidence are subject to the *McDonnell Douglas* three-step burden-shifting framework outlined above.  As before, under this framework, where an employee offers a legitimate, nondiscriminatory reason for its challenged action, the court must assume the plaintiff has made out a *prima facie* case of retaliation and "proceed to the question of retaliation *vel non*," which can be resolved "in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of [his] case—here that [his] employer took a materially adverse action against [him]." *Taylor*, 571 F.3d at 1320 n.4; *see also Hernandez v. Pritzker*, 741 F.3d 129, 133 (D.C. Cir. 2013) (noting that "the 'central question' in [the] case is whether [the plaintiff] has produced sufficient evidence for a reasonable jury to find those reasons were but pretexts for retaliation" (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012))).  Focus on this "one central inquiry" is appropriate because a legitimate non-discriminatory reason for the employer's actions breaks the necessary "but-for causation" link between the protected activity and the adverse employment action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 2533 (2013).

Set against this legal background, the plaintiff's retaliation claim succumbs to many of the same infirmities as his disparate treatment claim.  First, while filing a complaint with the EEOC clearly constitutes protected activity under Title VII, *Forkkio*, 306 F.3d at 1131–32, the plaintiff's submissions in connection with the present motion leave some uncertainty as to which activity he claims gave rise to the agency's alleged retaliation.  On one hand, the parties do not dispute that, at the time of the plaintiff's request, he had filed at least two prior EEO complaints alleging discrimination by the agency, of which the plaintiff's supervisors were aware.  Def.'s

SMF ¶¶ 34–35; Pl.'s SMF ¶¶ 34–35.  Beyond these prior, unrelated complaints, the plaintiff

contends he was engaged in protected activity "when he contacted an EEO counselor on

September 23, 2008."  Pl.'s Opp'n at 23.[6]  Given that he now alleges that this most recent

contact with the EPA EEO counselor was spurred by the denial of his request to remote-work,

however, it is difficult to imagine how the agency could have retaliated against the plaintiff in

response to protected activity that had not yet occurred.

Nonetheless, even assuming the plaintiff engaged in protected activity prior to the denial

of his request to remote-work, the plaintiff points to little evidence to suggest that the challenged

agency action in this case (the failure to approve his remote-work request) constitutes a

"materially adverse" action sufficient to support his claim of illegal retaliation.  As the D.C.

Circuit has clarified, a "[m]aterially adverse action would "dissuade[] a reasonable worker from

making or supporting a charge of discrimination."  *Bridgeforth*, 721 F.3d at 663 (quoting

*Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).  As with a disparate treatment claims, such

an action must demonstrate "'objectively tangible harm,'" *id.* (quoting *Forkkio*, 306 F.3d at

1131), and "[t]ypically . . . involves 'a significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing significant change in benefits,'" *id.* (quoting *Taylor*, 350 F.3d at 1293).  As discussed

above, *see supra* Part III.B.1., the plaintiff offers little evidence that the agency's failure to

approve the plaintiff's long-term remote-work request constituted a significant change in the

benefits of his employment.  Quite the contrary, based on the undisputed record evidence of the

---

[6]    The plaintiff also suggests, incorrectly, that "his protected activity started when he first sent his inquiry on January 11, 2008 to the NCEA managers and other agency officials asking about EPA's flexiplace program . . . [and] was also engaged in protected activity on September 2, 2008, when he sent his email request to his line managers asking that he be allowed to work remotely from Rochester."  Pl.'s Opp'n. at 22–23.  Indeed, because this correspondence indicates no effort to "oppos[e] a practice made unlawful by Title VII," the plaintiff's requests for information regarding the Flexiplace Policy and permission to work remotely cannot themselves qualify as protected activity under Title VII.  *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

agency's Flexiplace Policy, EPA maintained no formal policy at the time of the plaintiff's request permitting remote-work arrangements similar to those requested by the plaintiff.  Def.'s SMF ¶¶ 4–5; Pl.'s SMF ¶¶ 4–5.  Likewise, the plaintiff has offered no evidence to show that the agency's inaction regarding his request would tend to "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *Bridgeforth*, 721 F.3d at 663.  Indeed, given the extraordinary nature of the plaintiff's request, there is little reason to believe that other EPA employees, fearful that such an unusual request may not be granted, would be any less likely to pursue allegations of discrimination against the agency.

Finally, even assuming the failure to grant the plaintiff's unorthodox request constituted a "materially adverse" action giving rise to a claim of retaliation, the agency has offered, and the plaintiff has failed to refute, several legitimate, non-retaliatory reasons for its failure to grant the plaintiff's request, *see supra* Part III.B.2.  As such, the question for this court to decide is whether the plaintiff "has produced sufficient evidence for a reasonable jury to find [that the agency's asserted] reasons were but pretexts for retaliation."  *Hernandez*, 741 F.3d at 133.  While the parties agree that the plaintiff's supervisors were aware of his prior EEO activity when the plaintiff first submitted his remote-work request, *see* Def.'s Mem. at 10, the plaintiff points to no direct evidence in the record linking their awareness of his prior complaints to the agency's failure to grant his request.  Instead, the plaintiff argues that his supervisors' mere awareness of his prior EEO complaints at the time of his September 2008 remote-work request raises an inference that the denial of this request was in retaliation of his prior protected activity.  Pl.'s Opp'n. at 23.

In general, temporal proximity between an adverse action and an employee's protected activity "is a common and highly probative type of circumstantial evidence of retaliation."  *Allen*

*v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015).  Thus, "evidence of a pattern of antagonism following closely on the heels of protected activity and related to the challenged employment action may establish the causation element of a Title VII plaintiff's *prima facie* case" of retaliation.  *Id.* at 46.  Nonetheless, the D.C. Circuit has also held "that the fact that [an] adverse action follows closely after an employee's protected assertion of rights is not, by itself, always enough to survive summary judgment."  *Id.* at 47.  In particular, where "an employer has put forth legitimate, non-retaliatory reasons for a challenged action, 'positive evidence *beyond mere proximity* is required to defeat the presumption that the proffered explanations are genuine.'"  *Id.* (emphasis added) (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012)).

With this in mind, the plaintiff's heavy reliance on the purported temporal proximity of his request with his prior EEO complaints as a basis for inferring retaliatory motive appears to be misplaced.  While the record is unclear as to whether any of the plaintiff's prior complaints were pending at the time that he submitted his remote-work request, at least one of these complaints was resolved more than a year before his September 2008 request.  *See Walker*, 501 F. Supp. 2d at 161 (denying the instant plaintiff's discrimination claim against EPA on August 17, 2007).  By comparison, the D.C. Circuit has held that no inference of retaliation arises where a protective activity and later adverse action are separated by more than two and a half months.  *See Walker*, 798 F.3d at 1093 (D.C. Cir. 2015) (finding "no inference of retaliation" based on the "temporal proximity between [plaintiff's supervisor] learning of [the plaintiff's] EEO activity on April 7 and his issuing the [alleged materially adverse action] on June 25); *Taylor*, 571 F.3d at 1322 (D.C. Cir. 2009) (rejecting as "untenable" "an inference of retaliatory motive based upon the 'mere proximity' in time" between an employee filing a lawsuit, and discipline for unexcused absence two and one-half months later).  Moreover, the plaintiff offers no evidence beyond any

allegation of temporal proximity to refute the agency's asserted non-discriminatory justifications for denying the plaintiff's remote-work request.  In particular, while a Title VII plaintiff may rely on comparator evidence to demonstrate an employer's retaliatory motive, *Walker*, 798 F.3d at 1092, the plaintiff's comparator evidence fails to demonstrate that the plaintiff was treated differently than other employees in respect to his remote-work request, *see supra* Part III.B.2.

Consequently, the plaintiff has offered no evidence upon which a jury could infer that the agency's denial of the plaintiff's remote-work request was animated by retaliatory animus. Accordingly, the plaintiff has failed to raise a material factual issue warranting resolution of his retaliation claim at trial, and the agency's request for summary judgment on this claim is granted.

## IV.    CONCLUSION

For the foregoing reasons, upon consideration of the plaintiff's Complaint and the parties' submissions in connection with the present motion, the Court concludes that the plaintiff has failed to produce sufficient evidence for a reasonable jury to find that EPA's asserted non-discriminatory reasons for failing to grant the plaintiff's extraordinary request to work away from any EPA facility for a period of two years were merely pretext masking racial or retaliatory motive.  Accordingly, the defendant's motion for summary judgment on the plaintiff's disparate treatment and retaliation claims is granted.


Date: March 22, 2016

                                                      _____
                                                      BERYL A. HOWELL
                                                      Chief Judge